OPINION
Mark J. Thornton appeals from his conviction in Montgomery County Common Pleas Court of possession of crack cocaine pursuant to his no contest plea. The facts underlying his appeal are not in dispute and are set out in the State's brief as follows.
At approximately midnight on January 21, 2000, Officers Richard Taylor and Roger Pittman of the Dayton Police Department were on routine patrol when they observed a mid-1980 GM model vehicle turn onto Little Street in the City of Dayton. Aware that there had been several grand theft auto incidents involving GM vehicles, Officer Taylor and Pittman decided to investigate whether the car was stolen. Officers Taylor and Pittman got behind the car in their cruiser so that they could read the car's license plate number and run it through LEADS. About that time, the vehicle began to speed up and accelerate away from their cruiser.
As the car approached Quitman Street, the driver signaled a turn but then "completely ran the stop sign." The officers decided to initiate a traffic stop. However, once on Quitman, the car pulled to the side of the street and, before the officers could activate the cruiser's emergency equipment, the driver's front door, the passenger-side front door and passenger-side rear door of the car flew open and three individuals "took off running."
Officer Taylor focused his attention on the driver of the car, later identified as Defendant, and pursued him on foot through nearby backyards and over fences. As Officer Taylor ran approximately ten yards behind Defendant on Blommel Lane, he observed Thornton move his right arm in front of his body, fish around, and then throw something across his body to the left as he was running. Officer Taylor and Thornton were running alongside a concrete building and, when Thornton made the "pitcher's motion," Officer Taylor heard a "thud" on the building a "split second later."
At that time, Thornton lost his footing on the ice and snow and stumbled. Officer Taylor grabbed onto Thornton and they both fell to the ground. Taylor was able to gain control of Thornton and place him in the handcuffs. As Officer Taylor helped Thornton up, he heard something hit the ground, looked down and saw a small, black, electronic digital scale, which he recognized the scale as one that is consistently used to weigh drugs.
Meanwhile, Officer Pittman had pursued the rear passenger of Thornton's car, apprehended her about a half block from the car, and placed her in the cruiser. With all three doors of Thornton's car still open, Officer Pittman began to look for signs that the car was stolen. From outside the car, Pittman noticed a nine millimeter handgun laying on the front passenger-side floorboard. When Pittman bent down to retrieve the gun, he saw a plastic bag "half under the seat and half out" about five inches from the gun which contained crack cocaine.
At that time, Officer Pittman radioed Officer Taylor and advised him to be careful because he had found a loaded gun in the car. Taylor conducted a pat-down of Thornton's outer clothing and transported the defendant back to the cruiser. Thornton was arrested for carrying a concealed weapon and drug abuse. At the county jail, Officer Taylor conducted another pat-down, felt something in defendant's left coat pocket and retrieved a bag of crack cocaine. Officer Taylor also found $620 in cash in Defendant's right, front pants pocket. The drugs found at the jail formed the basis for the indictment.
In overruling Thornton's suppression motion, the trial court made the following findings and conclusions:
 The evidence is not in dispute. The Court adopts the uncontroverted testimony of Officer Taylor and Officer Pittman as the factual basis for the Court's ruling on Defendant's motion.
 Defendant questions the validity of Officer Pittman's search of the car and the validity of Officer Taylor's arrest of Defendant. The State argues that the stop of Defendant was proper, that the Defendant was not under arrest when he was initially handcuffed, that the gun and drugs were recovered under the "plain view" doctrine, that Defendant's arrest for drug possession was valid, and that the recovery of crack cocaine in Defendant's coat was incident to a lawful arrest.
 The Court is persuaded by the State's analysis. Accordingly, the Court OVERRULES Defendant's Motion to Suppress.
 The Court finds that the chase, apprehension, and detention of Defendant for the stop sign traffic violation was not an arrest of the Defendant and was constitutionally reasonable under the circumstances. When Defendant was brought up off the ground and the scale was discovered, Officer Taylor had reasonable, articulable suspicion for an investigative detention when the Defendant's possession of the scale is combined with Defendant's prior "throwing motion" and Officer Taylor's hearing of a "thud" of an object on the side of a building during the pursuit.
 Given the valid investigative detention of Defendant by Officer Taylor under Terry v. Ohio (1968), 392 U.S. 1, and its progeny, the Court does not find the handcuffing of Defendant, under the attendant circumstances, to be unreasonable. Defendant was handcuffed for only a few minutes before Officer Pittman radioed Officer Taylor to advise Taylor that a gun and drugs had been found on the floorboard of the car. See, State v. Payne (May 4, 1994), Montgomery App. No. 13898, unreported, for the proposition that handcuffing may not constitute an arrest when the suspect has demonstrated a risk of flight. Here, the Court finds the restraint was short lived and reasonable since articulable suspicion blossomed into probable cause for arrest when Pittman advised Taylor of the gun and drugs inside the car.
 The Court also finds that Officer Pittman was under no constitutional restriction prohibiting him from looking inside the car with doors open. Pittman saw a gun in plain view lying on the front floorboard. Pittman's seizure of the gun was reasonable in light of the traffic violation and flight of all occupants of the car. When seizing the gun, Pittman found within five (5) inches of the gun a baggie containing suspected crack cocaine and seized it also. The Court finds that the plain view doctrine applies to the circumstances presented here.
 Having concluded that probable cause existed for Defendant's arrest for drug possession, the search at the jail incident to Defendant's arrest was valid. That search led to the crack cocaine for which Defendant faces prosecution.
In his sole assignment of error, Defendant argues that: (1) the officers' belief that the car Defendant was driving was stolen did not justify a search of the vehicle; (2) Defendant's commission of a traffic violation did not justify his arrest; (3) the officers did not have probable cause to arrest Defendant because the weapon found in the vehicle was not concealed; (4) the drugs that formed the basis for Defendant's arrest were unlawfully seized from the vehicle; and (5) the officers did not have probable cause to arrest Defendant because there was no evidence that the defendant was in constructive possession of the drugs in the car.
Thornton argues that his arrest was unlawful because the officers did not possess probable cause to believe he carried a concealed weapon or possessed the cocaine which was found in the car he was driving. Specifically Thornton notes that Officer Pittman testified that the nine-millimeter handgun was in "plain view" on the floor board of the passenger side of the vehicle and thus was not concealed. He cites us to State v. Potts (Sept. 28, 1998), Trumbull App. 97-T-0038, unreported.
In Potts, the court of appeals found that no probable cause existed that two knives were "concealed" because Trooper Hill observed the knives in "plain view" while Potts was seated in the driver's seat of his vehicle. The appeals court did recognize that a weapon can be considered concealed if its presence is only discovered after the driver or passenger leaves the vehicle. The court noted at page 3 of its opinion:
 4. The common thread of Shipley, Pettit, and Coker is that in each case the weapon was discovered only after the driver and/or passenger had exited the vehicle. These three cases did not involve an officer making a plain view seizure at the same time that the weapon was allegedly concealed. This factual distinction is amplified by the cogent analysis of Judge Edward Mahoney's concurring opinion in Coker:
 "I have great difficulty in believing that an object may be concealed and in plain view at the same time. I can readily believe, however, that a concealed object can come into plain view by a change of position of a person or another object. Conversely, the positioning of a body or other object may be used to conceal an object from the view of a person who would be in a position to see it if it were not otherwise concealed. Here the butt of the shotgun came into view when the defendant exited the car." Coker at 100, 472 N.E.2d 747
(Mahoney, J., concurring).
 In summary, Shipley, Pettit, and Coker do not stand for the proposition that a weapon may be both in plain view and concealed at the same time. The facts of those cases only support the rule that a concealed weapon may emerge into plain view for seizure purposes by the movement of a person or an object.
(Emphasis ours).
In this case, the handgun was found lying on the floor board of a car in which a passenger had just been seated. It was reasonable for the officer to assume that the handgun would have been concealed from his view had the passenger not left the vehicle. The more difficult question is whether there was probable cause for the police officer to believe that Thornton was in "constructive possession" of the handgun prior to his fleeing the vehicle.
R.C. 2923.12(A) provides that "no person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance." The Committee Comment to HB 511 notes that this section prohibits having or carrying any deadly weapon or dangerous ordnance, either concealed on one's person, or concealed where it may readily be picked up or used. "Ready at hand" means so near as to be conveniently accessible and within immediate physical reach. See, Porello v. State (1929), 121 Ohio St. 280. In this case had Thornton remained seated in the vehicle, he could have reached over to the floor board in front of the passenger and gained physical control of the weapon.
It may be that a jury might have acquitted Thornton of the carrying concealed weapon charge, but the police officers in this case had probable cause to believe that Thornton had carried a concealed weapon prior to his arrest.
We need not decide whether the officers had probable cause to search the bag containing cocaine which was recovered from the vehicle. Thornton was properly arrested for carrying a concealed weapon. Thornton could also have been arrested for fleeing and eluding a police officer in violation of R.C. 2921.331(B) and possession of drug paraphernalia in violation of R.C. 2925.14(C)(1).
The cocaine found on Thornton's presence after he was arrested and searched at the county jail was properly admitted as a search incident to a lawful arrest and as an inventory search. United States v. Robinson (1973), 414 U.S. 218; Illinois v. LaFayette (1983), 462 U.S. 640. The trial court properly overruled the suppression motion. The assignment of error is overruled.
The judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.